IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 29, 2016

**DYRON NORM YOKLEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 283407    Barry A. Steelman, Judge**

_____

**No. E2015-01386-CCA-R3-PC – Filed September 6, 2016**

_____

The Petitioner, Dyron Norm Yokley, appeals the Hamilton County Criminal Court's denial of his petition for post-conviction relief from his second degree felony murder conviction and resulting thirty-five-year, Range II sentence. The Petitioner contends that the post-conviction court erred in denying his petition. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE MCMULLEN and ROBERT L. HOLLOWAY, JR. JJ., joined.

Donna R. Miller, Chattanooga, Tennessee, for the appellant, Dyron Norm Yokley.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; William H. Cox III, District Attorney General; Lance W. Pope, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's conviction relates to the shooting death of Tyus Steele. In the appeal of the conviction, this court summarized the evidence in its analysis of the sufficiency of the evidence as follows:

> In the light most favorable to the State, the Defendant admitted chasing and shooting the victim after meeting him to purchase drugs. Although the Defendant claimed to have believed the victim was going to rob him and said that the victim hit him in the head with a rock, the proof demonstrates that the victim fled from the Defendant down a steep hill after the Defendant brandished a handgun, that the chase continued even after both the victim and the Defendant fell down, that the Defendant was angry

and was not going to "go away empty-handed," that the Defendant fired four shots at the victim, and that after the Defendant struck the victim in the abdomen, he shot the victim in the head while the victim was lying on the ground. The evidence is sufficient to support the jury's finding that the Defendant knew his conduct was reasonably certain to cause the victim's death.

*State v. Dyron Norm Yokley*, No. E2009-02646-CCA-R3-CD, 2011 WL 2120096, at *18 (Tenn. Crim. App. May 20, 2011), *perm. app. denied* (Tenn. Sept. 21, 2011).

In his post-conviction petition, the Petitioner raised two groups of issues that are pertinent to this appeal. First, he alleged that his Fifth Amendment right to due process and his Sixth Amendment rights to a jury trial and to the effective assistance of counsel were violated when the State failed to disclose that the employment of a police officer involved in the case had been terminated for dishonesty and when appellate counsel failed to present the issue fully in the appeal of the conviction. Second, he alleged that his constitutional rights to a fair trial and to the effective assistance of counsel were violated by trial counsel's concession that the Petitioner was a Range II, multiple offender despite the facial invalidity of the Petitioner's four prior convictions.

At the post-conviction hearing, the Petitioner testified that at the time he was sentenced as a Range II offender, he had four prior aggravated robbery convictions, for which the sentences were imposed concurrently. He said he had been present for the offense relative to one of the convictions but had been charged with three additional counts for which he was not present. He said he was offered a plea agreement whereby he entered best-interest pleas in exchange for concurrent eight-year sentences to be served on probation, although, for reasons he did not understand, he ultimately was sent to the Department of Correction. He said that he had allowed his friend to drive his car and that he had no knowledge the offenses were going to be committed. He said that he had been involved in a fist fight and that he had been present but was unaware when another person took a necklace and a ring after the fight, which resulted in an aggravated robbery charge. The Petitioner said that at the time of the conviction proceedings and the appeal, he had been unaware of any problem with the aggravated robbery judgments and that post-conviction counsel brought the matter to his attention.

Relative to the aggravated robbery convictions, the Petitioner said his understanding was that they occurred late at night from one day into the next but "right after one another" and that they involved different victims. He said that before he was sentenced in this case, he talked to his trial attorneys about the number of prior convictions he had.

Trial counsel[1] testified that she and co-counsel thought they had done everything they could to provide the Petitioner with the effective assistance of counsel. Relative to the events of the day of the offense, trial counsel said the Petitioner had been detained at the scene in a patrol car for three to four hours. During this time, the Petitioner discussed with Red Bank Officer David Spandau the events which culminated in the Petitioner's shooting the victim. Counsel agreed the conversation had not been recorded. She said the Petitioner later told his version of events to two other officers, but she said the subsequent statements were not as detailed as the statement to Officer Spandau. In counsel's opinion, Officer Spandau was the State's most valuable witness.

Trial counsel testified that Officer Spandau was on the State's witness list and that toward the end of the trial, she became curious why he had not testified. She asked the assistant district attorney who was prosecuting the case if Officer Spandau was going to testify, and he responded that Officer Spandau was not. She said the prosecutor told her during the trial that Officer Spandau was no longer employed with the Red Bank Police Department and that he had been involved in domestic issues with his wife or ex-wife, in which he pulled a gun. She said that the prosecutor did not tell her about an internal affairs investigation of Officer Spandau and that she did not learn this until after the trial. She said that she had subpoenaed Officer Spandau but that he had not responded to the subpoena. She said that about two months before the trial, she had subpoenaed the police officers' internal affairs files and that Officer Spandau's file did not reveal anything that created a credibility issue. She said that he had been reprimanded for allowing an indigent female to sleep at his apartment when he was not home. She agreed that Officer Spandau had other internal affairs issues which were not disclosed to the defense.

Regarding this court's determination in the appeal of the conviction that despite the State's failure to disclose the information about the internal affairs investigation of Officer Spandau, no violation of *Brady v. Maryland*, 373 U.S. 83 (1963), occurred because the information was not material, trial counsel testified that she did not think this court accounted for the fact that Officer Spandau was the only officer about which she did not have "good information . . . in order to cross-examine him and attack his credibility." She thought she had cross-examined all of the officers except him effectively. She said that although a few years had passed, her recollection was that she learned after the trial that Officer Spandau had resigned or been fired based upon his lack of truthfulness in an internal affairs inquiry. Counsel said that in her opinion, this court

---

[1] One of the Petitioner's two trial attorneys testified at the hearing. Post-conviction counsel informed the court that the other trial attorney was "nonambulatory" and that post-conviction counsel and the prosecutor had agreed the other trial attorney's testimony was not necessary at the hearing. We refer to the testifying attorney as "trial counsel" and the non-testifying attorney as "co-counsel."

had not taken into account in the previous appeal that the other officers had credibility issues.

After reviewing the trial transcript, trial counsel testified that Officer Spandau had become emotional during his testimony about the subject of his employment but that she did not recall his employment termination having "come up" during the trial. She said that during Officer Spandau's testimony, she had complimented the thoroughness of his report and stated she was sorry to hear that he was no longer with the Red Bank Police. She said that when he left the witness stand, Officer Spandau walked to her and hugged her with tears in his eyes. She said she later decided this had occurred because she had not asked him anything embarrassing about his employment. She said she previously had a good working relationship with Officer Spandau and was "shocked" when she learned he had left the police department. She said that in response to a question from the jury, the court had instructed the jury that Officer Spandau's employment termination was unrelated to the Petitioner's case. She said that had she been aware of the facts of the termination, she would have cross-examined Officer Spandau differently. She said that in his testimony, Officer Spandau "embellished" the facts he wrote in his report relative to his unrecorded conversation with the Petitioner. She thought Officer Spandau's testimony played a significant role in the Petitioner's conviction.

Trial counsel testified that in her opinion, effective cross-examination of Officer Spandau could have resulted in a verdict of guilt for voluntary manslaughter, rather than second degree murder. She said the situation in which the offense occurred evolved rapidly. She noted that the Petitioner mistakenly believed he was going to be killed when bystanders, whom the Petitioner erroneously thought were associated with the victim, appeared.

Trial counsel testified that she filed a discovery motion requesting the internal affairs files of the officers involved in the case, that she subpoenaed the files, that the court reviewed the files *in camera* before ruling on the State's motion to quash her subpoena, and that shortly before the trial she requested additional information related to Officer Spandau. She agreed that although she was not provided with the information about the circumstances of his employment termination, she took every step she could to obtain the information. She acknowledged the existence of evidence, aside from Officer Spandau's testimony, that the Petitioner admitted shooting the victim. She said the pertinent question was that of the Petitioner's state of mind at the time of the shooting. She said that she had cross-examined Officer Spandau about the fact that, despite his testimony that the Petitioner walked to the victim and shot the victim in the head, Officer Spandau had not included this information in his written report.

Trial counsel testified that the professionalism and crime scene investigation of the Red Bank Police Department were issues in the Petitioner's case. She noted an issue

regarding the money collected as evidence. She said that the personnel files she reviewed reflected that some Red Bank officers had been fired previously by Chattanooga and Hamilton County departments. She agreed that the Red Bank Police looked like "Keystone Cops" in the Petitioner's case.

Trial counsel testified, "I did the best I could with what I had," aside from the cross-examination of Officer Spandau. She said that most of the State's witnesses refused to talk to her and co-counsel before the trial.

Regarding the sentencing hearing, trial counsel testified that numerous individuals offered to testify on the Petitioner's behalf. She agreed that the witnesses thought the Petitioner was different from other inmates.

Trial counsel testified that at the time she conceded the Petitioner was a Range II offender, she believed this information was correct. She said she requested and received copies of the affidavits of complaint, indictments, and judgments of the Petitioner's prior convictions before the sentencing hearing. She said that although the Lawrence County judgment forms were completed differently than how they would have been completed in Hamilton County, she "accepted them as the way that Lawrence County did business." She thought the Petitioner told her he had four prior convictions and said their conversation about the prior convictions helped convince her he was a Range II offender. She said that the Petitioner pleaded guilty and that the judgments were valid but that they were drafted erroneously due to the way the counts and convictions were combined. She said that until post-conviction counsel made her aware of Tennessee Supreme Court Rule 17 and Tennessee Code Annotated section 40-35-209(f), she had been unaware the rule required separate judgments for each count. She said post-conviction counsel likewise made her aware of caselaw providing that improper judgments could not be used for sentence enhancement and that improper judgments should be attacked in a post-conviction action. She said that if she had known this information, she would not have conceded the Petitioner was a Range II offender and would have asserted he was a Range I offender. She said that in this regard, she provided ineffective assistance of counsel to the Petitioner.

Trial counsel testified that another attorney handled the appeal of the Petitioner's conviction. She agreed that appellate counsel raised an issue regarding the length of the sentence but that he did not challenge the Range II classification.

Excerpts from the transcripts of Officer Spandau's testimony at a pretrial hearing and at the trial were received as exhibits. The judgment forms for the Petitioner's prior Lawrence County convictions were also received as exhibits.

After receiving the proof, the post-conviction court determined that the Petitioner failed to prove his claims of ineffective assistance of counsel and denied relief. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

# I

## Issues Related to Officer Spandau's Testimony

The Petitioner contends that his Fifth Amendment right to due process and his Sixth Amendment rights to a jury trial and to the effective assistance of counsel were violated when the State failed to disclose information about the circumstances of Officer Spandau's employment termination and when appellate counsel failed to present the issue effectively in the appeal of the conviction. The State contends that the Petitioner's issues regarding due process and right to a jury trial are barred because they were previously determined in the appeal of the conviction and that the post-conviction court properly determined that he did not receive the ineffective assistance of counsel.

### A. Due Process

In the appeal of the conviction, appellate counsel raised a due process issue regarding the State's non-disclosure of the facts surrounding Officer Spandau's employment termination. This court determined that although the State had not disclosed relevant information, its failure to provide the information did not amount to a due process violation pursuant to *Brady*, 373 U.S. 83, because the information did not undermine confidence in the outcome of the trial. *Dyron Norm Yokley*, 2011 WL 2120096, at *26-30. In analyzing the question of whether the evidence was material, this court said:

> The question remains whether the evidence was material. For evaluating whether there is a due process violation under Brady, evidence is

-6-

considered material and its nondisclosure a violation of due process "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" [*Edgin v. State*, 902 S.W.2d 387, 390 (Tenn. 1995)] (opinion on petition for rehearing) (quoting [*Kyles v. Whitley*, 514 U.S. 419, 433 (1995)]). The question is not whether the Defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles*, 514 U.S. at 434.

The Defendant argues that cross-examination of Mr. Spandau from the unproduced documents was essential. He notes, "Officer Spandau . . . testified that the [Defendant] had made an unrecorded statement in the police car on [the day after the crime], in which [the Defendant] was alleged to have made statements including that he 'walked up' and shot the victim in the head after the victim fell from being shot the first time."

As we have said, the evidence was requested, suppressed, and favorable to the Defendant. We conclude, however, that despite the State's failure to disclose this information, it was not material as contemplated in *Brady*. We note that evidence favorable to the defense and subject to disclosure nevertheless may not be "material" under Brady's standard for materiality in determining whether the Defendant received a fair trial that comports with due process. *See, e.g.*, *Copeland*, 983 S.W.2d at 706 (holding that the State's failure to disclose that one of its witnesses had been convicted of writing a worthless check and had been charged with writing several other worthless checks was favorable evidence that the defendant could have used to impeach the witness at the trial but was not material under *Brady*'s parameters for establishing a due process violation); *Michael Eugene Sample v. State*, No. W2008-02466-CCA-R3-PD, [2010 WL 2384833,] Shelby County (Tenn. Crim. App. June 15, 2010) (holding in death penalty defendant's post-conviction appeal that evidence of witness's failure to identify the defendant in a lineup could have been used to impeach the witness's trial testimony identifying the defendant as the person who shot at him but was not material as contemplated by *Brady* because the defendant failed to establish a reasonable probability that the results would have been different if this information had been disclosed before the trial; also holding evidence not material under *Brady* when an eyewitness's pretrial description to a police officer of the suspects could have been used to impeach the eyewitness's trial testimony identifying the defendant and the co-defendant as the perpetrators of the crime), *app.*

*denied* (Tenn. Nov. 12, 2010); *State v. Terrell Thomas*, No. E2003-02658-CCA-R3-CD, [2004 WL 2544682,] Cocke County (Tenn. Crim. App. Nov. [10], 2004) (holding that evidence not disclosed until after the trial that could have been used to impeach a prosecution witness was not material where "it [was] cumulative impeachment evidence and relatively insignificant in comparison to the evidence that was presented to the jury at trial"), *app. denied* (Tenn. Feb. 28, 2005).

Turning to the present case, the statement Mr. Spandau attributed to the Defendant was relevant to the question of whether the Defendant premeditated the killing. We note that although the Defendant was charged with premeditated first degree murder and especially aggravated robbery, the jury acquitted him on those charges and found him guilty of second degree murder, which does not require premeditation. *Compare* T.C.A. § 39-13-202(a)(1) (2006) (amended 2007) (premeditated first degree murder) *with* § 39-13-210 (2010) (second degree murder). Even if the defense had the information to thoroughly impeach Mr. Spandau's credibility, other evidence overwhelmingly established the Defendant's culpability.

The Defendant admitted in his recorded statement that he chased down the victim and shot him multiple times. Dr. King's testimony established that the findings of the autopsy and a photograph taken at the scene were consistent with the victim's having been shot in the abdomen and then having been shot a second time in the head after he fell from the first shot. Mr. McCurdy testified that he saw the Defendant chasing the victim for several minutes, that he heard three or four gunshots, and that he saw the Defendant holding a handgun. The record also reflects that the defense thoroughly challenged Mr. Spandau's credibility through cross-examination about the creation of his written report. We hold that although the evidence should have been disclosed before the trial, it was not material under the *Brady* standard for establishing a due process violation because its suppression does not undermine confidence in the verdict. The Defendant is not entitled to relief.

*Dyron Norm Yokley*, 2011 WL 2120096, at *28-30.

"A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." T.C.A. § 40-30-106(h) (2012). Such claims are barred by the Post-Conviction Procedure Act. *See id.*; *Thomas v. State*, 298 S.W.3d 610, 614 (Tenn. Crim. App. 2009). The Petitioner's

due process issue has been previously determined by this court and is not subject to further consideration.

## B.  Right to A Jury Trial

The Petitioner's right to a jury trial issue was not raised in the previous appeal.  "A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," subject to certain exceptions which do not apply to the present case.  *See* T.C.A. § 40-30-106(g).  To the extent that the Petitioner has raised a right to a jury trial issue in the present appeal, consideration of this issue is waived.

## C. Ineffective Assistance of Counsel

The Petitioner contends that appellate counsel was ineffective in the manner in which counsel raised the issue of the State's failure to disclose the information about Sergeant Spandau's employment termination.  He has not raised, on appeal, an issue regarding trial counsel's effectiveness relative to this issue.  The State contends, generally, that the post-conviction court correctly determined that trial counsel was not ineffective, but the State has not addressed the specific question of appellate counsel's effectiveness relative to the nondisclosure of evidence pertaining to Officer Spandau.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993).  The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution.  *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).  The standard is the same, whether reviewing the performance of trial or appellate counsel.  *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim.  *Henley*, 960 S.W.2d at 580.  "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim."  *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).  To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases."  *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690.  The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent

assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In its order denying relief, the post-conviction court stated the following:

Even when [the] Court treats the *Brady* claim as an ineffective-assistance-of-counsel claim, it finds that any deficiency in trial counsel's decision to call Off. Spandeau[2] herself or appellate counsel's failure to argue on appeal that the credibility of Off. Spandeau's testimony that [the Petitioner] "walked up and shot the victim in the head" was important not only on the issue of premeditation in the context of the offense of first-degree murder but on the issues of provocation and passion in the context of the offense of voluntary manslaughter was not prejudicial. The officer's account of the petitioner's statements at the scene the next day regarding the entire sequence of events: his premonition that the victim was planning to rob him, the victim's attack on him with a rock, the victim's flight from his gun, the victim's gestures at people in the van, his apparently sincere belief that the people in the van were friends of the victim and part of the robbery, his anger, and his belief that it was necessary to kill the victim. As a whole, the officer's account of the petitioner's statements at the scene the next day establish provocation and passion, which was important to the defense because the petitioner did not testify.

Furthermore, other testimony corroborates Off. Spandeau's account of the petitioner's statement about shooting the victim in the head: the medical examiner's testimony regarding the order and nature of the victim's gunshot wounds, the victim's position at the time of the injury to his head, and the victim's inability to move after the injury to his head and Det. Cooper's account of the petitioner's statements at the station, including the statements regarding his pursuit of the victim, his three or four shots at the victim, the victim's falls, and his anger and determination not to "'go

_____
[2] Officer Spandau's name was spelled "Spandau" by this court in the opinion from the previous appeal. In the transcript of the post-conviction hearing and the post-conviction court's order denying relief, it was spelled "Spandeau."

away empty-handed.'" Thus, even [if] the jury had reason to doubt Off. Spandeau's credibility with respect to the petitioner's statement about shooting the victim in the head but not with respect to the petitioner's apparently sincere belief that the people in the van were friends of the victim and part of the robbery, what petitioner did and that it was not commensurate with the provocation was apparent: at the end of a pursuit to forestall a robbery or obtain marijuana, he shot a fleeing person in the head. There is therefore no reasonable probability that the acts or omissions of trial or appellate counsel in this respect were prejudicial.

Our supreme court has said:

Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. *King v. State*, 989 S.W.2d 319, 334 (Tenn. 1999); *Campbell v. State*, 904 S.W.2d 594, 596-97 (Tenn. 1995). Indeed, "experienced advocates have long 'emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.'" *Cooper v. State*, 849 S.W.2d 744, 747 (Tenn. 1993) (quoting *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)); *see also Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion. *Jones*, 463 U.S. at 751, 103 S. Ct. 3308; *King*, 989 S.W.2d at 334; *Cooper*, 849 S.W.2d at 747. Therefore, appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference. *See Campbell*, 904 S.W.2d at 597; *see also Strickland*, 466 U.S. at 689, 104 S. Ct. 2052.

*Carpenter*, 126 S.W.3d at 887. The Petitioner did not call appellate counsel as a witness at the post-conviction hearing. Although the Petitioner presented trial counsel's evaluation of appellate counsel's performance relative to his raising this issue on appeal, no evidence addresses whether appellate counsel made an informed strategic decision to raise the issue in the manner he did because, in his estimation, the *Brady* claim was the Petitioner's strongest argument for a new trial. Without proof regarding counsel's decision-making process in choosing the issues to be raised on appeal, the record fails to show clear and convincing evidence that appellate counsel's performance was deficient.

Turning to the question of prejudice, we acknowledge trial counsel's testimony that the full extent of the Spandau termination facts was not disclosed until after the trial. In the opinion in the previous appeal, this court noted that the defense was unaware at the trial of the reason for Officer Spandau's resignation from the police department and that

after counsel for both parties conferred at the trial court's direction, "the defense was convinced that the resignation and its circumstances were not relevant to the Defendant's case." *Dyron Norm Yokley*, 2011 WL 2120096, at *27. The post-conviction court likewise noted that after the trial, the defense obtained personnel documents which included a letter from the city manager to Officer Spandau, which predated the trial, stating that the police chief had informed the city manager "that an investigation will take place dealing with various issues including insubordination, lying, and the possibility of interfering with an ongoing criminal investigation in a case which could possibly compromise the investigative integrity of our Police Department." *Id.* at *28.

In its order denying relief, the post-conviction court concluded that no reasonable probability existed that the acts or omissions of appellate counsel were prejudicial. In the previous appeal, this court considered the evidence disclosed to the defense after the trial and determined that the evidence was not material for *Brady* purposes because its suppression by the State did not undermine the court's confidence in the verdict. *Id.* at *29. Upon review, we cannot conclude that appellate counsel presented the issue in a manner that prevented this court from considering it fully. The post-conviction court did not err in determining that the Petitioner failed to present clear and convincing evidence he was prejudiced by appellate counsel's representation relative to the Spandau termination information.

We conclude that the evidence does not preponderate against the post-conviction court's findings. The Petitioner is not entitled to relief on this basis.

**II**

**Issues Relative to Range II Sentencing**

The Petitioner contends that trial counsel was ineffective in failing to contest his Range II sentencing classification and that he was denied his right to a fair trial by counsel's inapt concession. He argues that the judgments for his four prior convictions were facially invalid because the two judgment forms recorded two convictions each. He argues that, therefore, they could not provide the basis for Range II enhancement. The State contends that the irregularities in the judgment forms were technical errors that did not render the judgments void and that, therefore, the post-conviction court did not err in denying relief on this basis.

The Petitioner's prior Lawrence County aggravated robbery judgments were received as exhibits at the post-conviction hearing. A single judgment form reflects convictions and eight-year sentences for Counts 1 and 2 of case number 20670. A second, single judgment form reflects convictions and eight-year sentences for case

numbers 20669 and 20671. The forms reflect that all of the sentences for case numbers 20669, 20670, and 20671 are to be served concurrently.

The Petitioner bases his argument that the judgments are improper upon Tennessee Supreme Court Rule 17 and Tennessee Code Annotated section 40-35-209(f). On May 24, 1999, the date the judgments were filed, Rule 17 provided, in pertinent part, "The judgment should be prepared for each conviction; if there are multiple convictions in the same indictment, separate judgments should be filled out with appropriate notations stating whether the sentences will run consecutively or concurrently." Tenn. Sup. Ct. R. 17 (1998) (amended 1989, 1991, 1992, 1994, 1995, 2000, 2007, 2008, 2011, 2013, 2015). At the time the judgments were filed, Code section 40-35-209(f) stated, "The supreme court shall promulgate a uniform judgment document for use the by the trial judges in this state, and the trial judges shall employ that document for each criminal case resulting in a conviction." T.C.A. § 40-35-209(f) (1997) (amended 2000, 2009).

We note that the Petitioner does not argue that the convictions or sentences imposed were unauthorized by law. Rather, he argues only that the trial court's manner of recording the judgments by including two convictions per judgment form was contrary to the rule and the statute prescribing a separate judgment form for each conviction.

Relative to this issue, the post-conviction court stated the following:

> The petitioner is correct that his prior convictions do not comport with the direction in Tenn. Sup. Ct. R. 17 to use separate judgment forms for each conviction. The petitioner, however, is incorrect that the error renders the convictions or sentences facially invalid so as to preclude their use in [the second degree murder case] to classify him as a multiple offender.

> What renders a judgment of conviction void is lack of jurisdiction or authority to sentence. *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993); *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994). With respect to the judgments from Lawrence County, the petitioner alleges neither lack of jurisdiction or lack of authority to sentence.

> The failure to complete separate judgment forms for each conviction, though a violation of Rule 17, is a technical error that does not render a judgment void.

In rejecting the petitioner's ineffective assistance of counsel claim relative to trial counsel's failure to challenge Range II sentencing classification, the post-conviction court relied upon *John Haws Burrell v. Howard Carlton, Warden*, No. E2002-01613-

-13-

CCA-R3-PC, 2003 WL 22381171, at *2 (Tenn. Crim. App. Oct. 17, 2003) ("*Burrell I*"), *perm. app. denied* (Tenn. Nov. 29, 2004), and *John Haws Burrell v. Howard Carlton, Warden*, No. E2004-01700-CCA-R3-HC, 2005 WL 544732, at *1 (Tenn. Crim. App. Mar. 8, 2005) ("*Burrell II*"), *perm. app. denied* (Tenn. June 20, 2005). The petitioner in *Burrell I* and *Burrell II* was convicted of seventeen offenses, for which the trial judge completed three judgment forms. The petitioner filed a habeas corpus petition attacking the convictions as void based upon the judgment forms. This court said that although the judgments did not comply with Tennessee Supreme Court Rule 17 and Tennessee Code Annotated 40-35-209(f), the error was technical, did not render the judgments void, and was capable of remedy by amendment of the judgment forms. *Burrell I*, 2003 WL 22381171, at *2. The petitioner filed a subsequent habeas corpus petition after the trial court amended the judgments alleging the court was without jurisdiction to amend the judgments. This court noted its previous ruling in *Burrell I* and cited Tennessee Rule of Criminal Procedure 36, which permits correction of clerical mistakes in judgments at any time. The petitioner also alleged in *Burrell II* that the trial court lacked jurisdiction to execute the judgments due to the court's initial use of three judgment forms for seventeen convictions. This court said, "[T]he remedy for such error is not to render the convictions void, but rather to amend the judgment forms to reflect a separate judgment document for each of the Appellant's seventeen convictions." *Burrell II*, 2005 WL 544732, at *1.

The situation in the Petitioner's case is like the factual scenario of *Burrell I* and *Burrell II*. The Petitioner's four convictions are reflected on two judgment forms, as the *Burrell* petitioner's seventeen convictions were reflected on three judgment forms. The Petitioner's convictions were not void based upon the trial court's failure to complete a separate judgment form for each conviction. The post-conviction court did not err in determining that trial counsel was not ineffective in failing to challenge Range II sentencing based upon the prior convictions, and the Petitioner has not shown that he was prejudiced by counsel's failure to challenge his Range II classification.

Upon consideration, we conclude that the evidence does not preponderate against the post-conviction court's findings. The Petitioner is not entitled to relief on this basis.

We conclude, likewise, that the Petitioner failed to show a violation of his right to a fair trial by trial counsel's lack of a challenge to his Range II sentencing classification. He has not shown that he was inappropriately classified.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

-14-

ROBERT H. MONTGOMERY, JR., JUDGE